KELLY *et al. v.* HAMILTON· *et al.*

1. To a suit by a donor against his donee to reform a deed so that it might include other donees who were omitted from the deed by mutual mistake, the persons omitted from the deed were not improper parties plaintiff.

2. The allegations of the petition presented a case of such mutuality of mistake in omitting matters, which were intended to·be included in the deed, as would authorize a decree of reformation in a court of equity.

3. Under the peculiar facts alleged, an equitable bar would not attach on account of laches, although thirty years intervened between the date of the execution of the deed and discovery of the mistake.

DECEMBER 14, 1910.

Equitable petition. Before Judge Martin. Montgomery superior court. August 12, 1910.

*A. C. Saffold, Jones & Sparks,* and *Hines & Jordan,* for plaintiffs in error.

*L. C. Underwood, Eugene Talmadge,* and *Graham & Graham,* contra.

ATKINSON, J. This was a suit in equity to reform a deed, to decree a life-interest in the property to be vested in two of the plaintiffs, with remainder over, and to enjoin the defendants from selling or otherwise encumbering or taking possession of the land. The defendants filed a demurrer, which was overruled, and they excepted.

1. Under the allegations of the petition Charles S. Hamilton desired to give to Miles Calhoun and his wife, Susan, a life-estate in certain land, with remainder to their children born and there-

after to be born. Two children, who were named as defendants, were then in esse, being mere infants. A number of other children were afterwards born. They were alleged to have been intended to take a remainder interest, while it was alleged that their parents, Miles and Susan, were intended to have had life-estates, according to. the design of the donor who executed the deed. Under these conditions the afterborn children, as well as Miles and Susan Calhoun, were sufficiently interested to render them proper parties plaintiff with Charles S. Hamilton, the donor, and the alleged grantor named in the deed.

2. The allegations present a case where a donor, who desired and intended to convey certain land to his reputed son and the wife of the latter, for their natural lives, with remainder over to their children born and to be born, but who was not sufficiently skilled in the law to prepare such a deed (the son and his wife also being unskilled in such matters, and the son being ignorant and unable to read or write), procured a justice of the peace to draft the deed to carry into effect the desire of the donor. It transpired that the justice of the peace was also unskilled, and by his mistake a deed was prepared which omitted to make any provision for life-estates, or afterborn children, and in ignorance of the mistake the grantor, while ill and confined to bed, executed the deed believing it to make provision for the life-estates in contemplation for the son and his wife and remainder estates for afterborn children, and it was accepted by the son with the same belief and in ignorance of the mistake. As to the grantor, who was a party to the deed, and the reputed son and his wife, the allegations relative to mistake were sufficient to amount to allegations of mutual mistake. It was contended that the donor could not reform this deed upon a mere mistake which was common to himself and to the reputed son and his wife who were not named as donees in the deed which was sought to be reformed, but that it was essential that the mistake should also extend to the children of the reputed son and his wife who were in esse at the date of the execution of the deed, as they were the only persons contemplated in the deed sought to be reformed who fell within the class "heirs" of Miles and Susan Calhoun; and that as they were mere infants at the date the deed was executed and did not participate in the transactions connected with the execution of the deed, they were not connected with any mistake which

might have been made by the donor and their parents. But the reply to this contention is that Miles Calhoun was the parent of the defendants, who were then infants, and he assumed to act for them as well as for himself in accepting the deed and taking possession thereunder. It was competent for him so to act. Civil Code, § 3565. There was but one delivery of the deed, which was to him. If it was ever delivered to the infants, it was delivered to them through him. In so far as he received the deed in behalf of the infants, he did so as agent for them, and any mistake that might have been made in that behalf would extend to them. If the mistake were otherwise a mutual mistake of all the parties, it would not be wanting in mutuality so as to escape correction by a decree of reformation merely because the infants had not otherwise participated in it. The infants could not accept the donation and deny the manner in which it was given. Equity would not sustain them in an effort to resist the application of the donor to have the instrument, which was intended to evidence the donation, so reformed as to make it speak the truth as to the mutual intention of the donor and the agent of such infants at the time of the execution of the instrument. On the general subject see *Wyche* v. *Green,* 16 *Ga.* 49.

3. It was a long time between the date of the deed sought to be reformed and the discovery of the alleged mistake. A period of thirty years, approximately, intervened. But promptly after the discovery of the mistake suit was filed by the donor and other parties at interest, to reform the deed. Under some circumstances the intervening of such great length of time might operate as a bar to equitable relief. *Aken* v. *Bullard,* 134 *Ga.* 665 (68 S. E. 482). But in this case it is alleged that the grantor was ill and confined to his bed at the time of the execution of the deed, and did not know of the mistake. Also, that it was delivered to the reputed son, who was ignorant and could not read or write, and that he too was ignorant of the mistake, but that he had had the deed duly recorded and retained it in his possession up to the time of the institution of the suit, and had also remained in possession of the land peaceably, quietly, and notoriously, and that during all of those years nothing had occurred to suggest to him that the deed did not convey the land as contended for in the petition for reformation. It thus appears that although a great length of time

intervened between the commission of the mistake and its discovery, the suit to correct it was between the original parties alleged to have made the mistake and the only parties at interest. Under these facts and the other circumstances above mentioned, the case on its facts differs from that of *Aken* v. *Bullard,* supra, and it should not be decided, as a matter of law, that the laches of the plaintiffs was such as to bar the action. What has been said in this and the foregoing divisions of the opinion sufficiently deals with all of the grounds of the demurrer.

*Judgment affirmed. All the Justices concur.*